UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS, DEL RIO
DIVISION

| | |
|---|---|
| JASMINE C., an individual and on behalf of M.C., a minor and her child; J.P., a minor by and through his parents and next friends, CRYSTAL P. and DANIEL P., individually and on behalf of a class of all similarly situated students; ANDREA V., individually and on behalf of a class of all similarly situated parents; ESTHER V., individually and on behalf of a class of all similarly situated school support staff; Z.R., a minor by and through his parent and next friend, CORINA R., individually; J.S., a minor by and through his parents and next friends, ALMA R. and GEORGE R., individually; L.R., a minor by and through her parents and next friends, LUCIENE A. and FRANK R., individually; Z.A., a minor by and through his parents and next friends, ESTHER V. and LUIS A., individually; M.T., a minor by and through her parent and next friend, LOUANNA R.; B.G. and F.G., minors by and through their parent and next friend, BEATRICE T., individually; J.L., a minor by and through her parent and next friend, ASHLEY L., individually; J.D., a minor by and through his parent and next friend, SANDRA V., individually; F.L., a minor by and through her parent and next friend, VIRGINIA G., individually; A.P., a minor by and through his parents and next friends, ARACELY P. and ROMAN P., individually; A.L., a minor by and through his parent and next friend, CRYSTAL G., individually; D.J.Q., a minor by and through his parents and next friends, MANUEL Q. and YVETTE Q., individually; J.P., a minor by and through her parent and next friend, JASMIN P., individually; T.G., a minor by and through her parent and next friend, JACKIE G., individually; R.F., a minor by and through her parent and next friend, MONICA O., | Case No. 2:23-cv-00014-AM<br><br>AMENDED COMPLAINT FOR DAMAGES<br><br>CLASS/MASS ACTION<br><br>1.  Negligence/Gross Negligence<br><br>2.  Negligence Per Se<br><br>3.  Negligent Transfer<br><br>4.  Negligent Sale<br><br>Jury Trial Demanded pursuant to Fed. R. Civ. P. 38(b) |

1

individually; A.V. and G.E., minors by and through their parents and next friends, ANDREA V., individually; N.S., a minor by and through her parent and next friend, ALIETA P., individually and grandmother, MARIA P., individually; A.L.A.T, a minor by and through her parent and next friend, CASSANDRA B., individually; G.D.G.R., a minor by and through her parents and next friends, SANDRA and MARTIN M., individually; MARIA G.R., individually; VANESSA G., individually; M.D.E., a minor by and through her parents and next friends, BERNARD E. and TANAMA J.E., individually; A.R., a minor by and through her parent and next friend, DEBORA Q., individually; J.A.M., a minor by and through her parents and next friends, LETICIA M. and MIKE M., individually; M.C.A., a minor by and through her parent and next friend MONICA H., individually; ALBERT V., individually; A.G., a minor by and through her parent and next friend, SELENA T., individually; M.C. a minor by and through her parent and next friend, MARISA S., individually; A.M. a minor by and through her parent and next friend, AIKO C., individually; and DOES 1 – 3000, individually,

    *Plaintiffs,*

v.

DANIEL DEFENSE, LLC; DANIEL DEFENSE, INC.; OASIS OUTBACK, LLC; and DOES 1 – 300.

    *Defendants.*

<u>DEFENDANT OASIS OUTBACK, LLC'S MOTION TO DISMISS</u>
<u>UNDER FED. R. CIV. P. 12(B)(6)</u>

This lawsuit arises from the criminal shooting at Robb Elementary in May 2022 perpetrated by an 18-year-old (the "Shooter" or "Purchaser").  Oasis Outback, LLC ("Oasis") is a local sporting goods store that also serves as a firearms dealer to complete online purchases made directly from gun manufacturers.  Plaintiffs are victims of the Shooter's crimes.

Plaintiffs have suffered unspeakable trauma.  They are entitled to and deserve empathy for the awful events of that tragic day.  But they cannot maintain this lawsuit against Oasis because it is immune from suit under the Protection of Lawful Commerce in Arms Act (15 U.S.C. §§ 7901–7903 ("PLCAA")).  And, even without the federal immunity granted under the PLCAA, Plaintiffs fail to state a claim against Oasis. Texas does not recognize claims for the negligent sale or transfer of a chattel. Whether the Court applies the PLCAA or Texas law, Oasis is entitled to dismissal.

## FACTUAL BACKGROUND

### I.  The PLCAA's framework.

The PLCAA was enacted by Congress in 2005 with bipartisan support. It generally prohibits lawsuits against firearms and ammunition manufacturers, distributors, sellers, dealers, and importers for damages arising from the criminal or unlawful misuse of firearms and ammunition by third parties. 15 U.S.C. § 7903(5)(A); 15 U.S.C. § 7901(b)(1).  Covered actions "may not be brought in any Federal or State court."  15 U.S.C. §7902(a).

Congress enacted the PLCAA in response to lawsuits seeking to hold firearm and ammunition manufacturers and sellers legally responsible for the criminal misuse of their products.  15 U.S.C. §§ 7901(a)(1)-(8).  In enacting the PLCAA, Congress specifically found that:

> The possibility of imposing liability on an entire industry for harm that is solely caused by others is an abuse of the legal system, erodes public confidence in our Nation's laws, threatens the diminution of a basic constitutional right and civil liberty, invites the disassembly and destabilization of other industries and economic sectors lawfully competing in the free enterprise system of the United States, and constitutes an unreasonable burden on interstate and foreign commerce of the United States.

15 U.S.C. § 7901(a)(6).

One purpose of the PLCAA is to "prohibit causes of action" against manufacturers and sellers of firearms and ammunition, 15 U.S.C. § 7901(b)(1), thereby "prevent[ing] the use of such lawsuits to impose unreasonable burdens on interstate and foreign commerce." 15 U.S.C. § 7901(b)(4). Another important purpose is to safeguard the Second Amendment and "preserve a citizen's access to a supply of firearms and ammunition."  15 U.S.C. §§ 7901(a)(1)-(2) and (b)(2)-(3); *Travieso v. Glock Inc.*, No. CV-20-00523-PHX-SMB, 2021 WL 913746, *3-4 (D. Ariz. Mar. 10, 2021), appeal dismissed, 2021 WL 4295762 (9th Cir. 2021).

The PLCAA generally prohibits claims against firearms and ammunition manufacturers, distributors, dealers, and importers for damages and injunctive relief arising from the criminal or unlawful misuse of firearms and ammunition, unless the suit falls within one of six enumerated exceptions. 15 U.S.C. §§ 7901–7903.The Texas Supreme Court addressed the PLCAA in *In re Acad., Ltd.*, 625 S.W.3d 19, 34 (Tex.

2021), a case dismissing claims stemming from the criminal shooting in Sutherland Springs. There, like here, the firearms dealer ran a background check that came back "clean," revealing no disqualification to the sale. *Id.* at 23. There, like here, the plaintiffs claimed the dealer was nevertheless liable for the sale under a negligent entrustment/transfer theory. The Texas Supreme Court applied the PLCAA to dismiss the case. *Id.* at 24. The Texas Supreme Court explained, the PLCAA "creates a substantive rule of law granting immunity to certain parties against certain types of claims." *Academy*, 625 S.W.3d at 34 (quoting *Ileto v. Glock, Inc.*, 565 F.3d 1126, 1142 (9th Cir. 2009)). "[T]he PLCAA prohibits, with six exceptions, a category of civil actions against manufacturers and sellers of firearms and ammunition products." *Id.*

Importantly, the PLCAA does not create causes of action or remedies. 15 U.S.C. § 7903(5)(C). For a cause of action to be exempt from PLCAA immunity, the action must exist under applicable state or federal law. *In re Acad., Ltd.*, 625 S.W.3d at 32.

## II. Plaintiffs' allegations.

The following allegations are taken as true for the purposes of dismissal:

| Page & Para. | Factual Allegations |
|---|---|
| P. 40 – 41;<br>¶¶ 106 – 110 | On his eighteenth birthday, May 16, 2022, Ramos went online and made two purchases. Primarily, he paid $1,761.50 to purchase 1,740 rounds of ammunition for use in an AR-15 rifle from an online retailer. Secondly, he steered his browser to Daniel Defense's webstore, where he ordered a DDM4 V7 AR-15 style rifle. Ramos requested that the DDM4 V7 be shipped to Oasis Outback, a gun store in Uvalde. Ramos paid $2,054.28 to purchase the rifle.<br><br>The next day, May 17, 2022, Ramos went to Oasis Outback in person and bought a Smith & Wesson M&P15 assault rifle for $1,081.42. |

|  | The day after, May 18, 2022, Ramos went to Oasis Outback to buy an additional 375 rounds of AR-15 ammunition.<br><br>Thereafter, on May 20, 2022, Ramos returned to Oasis Outback to pick up his Daniel Defense assault rifle.  Upon information and belief, Ramos paid a $50 transfer fee to Oasis Outback to pick up his rifle.  Thus, Ramos made three visits to Oasis within a four-day period.  In that short period, Ramos had purchased and acquired over $3,000 worth of guns and ammunition, including two AR-style rifles.  Oasis Outback was required to report this multiple sale of rifles and ammunition to the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF"), pursuant to a letter issued by the ATF on July 12, 2011.  Fulfilling its reporting requirements, however, does not absolve Oasis Outback from its obligation to block a sale on other relevant grounds, including when Oasis Outback knew or reasonably should have known that the purchaser was likely to harm himself or others.<br>On Ramos' May 20th visit to Oasis Outback to pick up his rifle, he also had employees install a holographic weapon sight on the rifle.  Such a sight allows a user to look through a small glass window and see holographic crosshairs superimposed on a target.  Holographic sights are designed for rapid short-range shooting and help users quickly acquire targets without having to undergo marksmanship training.  Once the crosshairs highlight a target, the user can fire.  Additionally, the rifle's holographic sight accessory permits shooters to keep both eyes open in order to identify more targets in their peripheral vision. |
| P. 42 - 43;<br>¶¶ 111 – 112 | Oasis Outback had a duty to refrain from selling weapons to the recently turned 18-year-old shooter, who it knew or reasonably should have known, was likely to harm himself or others.  The shooter was described by patrons of the store as displaying a nervous disposition and behaving suspiciously.  One witness at the store said Ramos "appeared odd and looked like one of those school shooters."  He was wearing all black, and was described as giving off "bad vibes."  The owner of Oasis Outback described him as alone and quiet, and questioned Ramos about how he could afford $3,000 worth of rifles.  He also knew Ramos was urgently purchasing a massive arsenal of firepower within days of turning the legal age of 18 years old.  Nevertheless, Oasis, with profit in mind, proceeded with the sale and sold this readily apparent troubled youth the rifles and ammunition. |

> Oasis Outback knew or should have known that Ramos was not purchasing the assault rifles for recreational purposes. The shooter was purchasing two extraordinarily lethal assault weapons and enough ammunition to fight off a small army, as well as a holographic sight and Hellfire Gen 2 trigger system, all within days of his 18th birthday and for a cost that was incommensurate with his young age and disposition. Ramos' intended, non-recreational use of his purchases from Oasis hauntingly transpired four days later.

Based on these allegations, Plaintiffs sue Oasis for (1) negligent transfer, Dkt. 14, Pls.' Am. Compl. at ¶¶212 – 222; and (2) negligent sale, Dkt. 14, Pls.' Am. Compl. at ¶¶223– 232.  Plaintiffs also ask for exemplary damages.  Pls.' Am. Compl. at p. 71.

## RULE 12(B)(6) LEGAL STANDARDS

A plaintiff's factual allegations "must be enough to raise a right to relief above the speculative level."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  A complaint must contain sufficient factual matter to state a claim for relief that is plausible on its face.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  A complaint should be dismissed when, on its face, it is devoid of facts necessary for the plaintiff to prevail under the cause of action asserted, or when the complaint itself discloses facts that necessarily defeat the causes of action pled.

PLCAA immunity is properly raised through a motion to dismiss under Rule 12(b)(6).  *See, e.g., Phillips v. LuckyGunner, LLC*, 84 F. Supp. 3d 1216, 1220 (D. Colo. 2015) (dismissing case stemming from a criminal shooting at a movie theater under PLCAA); *Bannerman v. Mountain State Pawn, Inc.*, No. 3:10-CV-46, 2010 WL 9103469, at *3, 8-9 (N.D. W. Va. Nov. 2010) (dismissing based on PLCAA); *Travieso v. Glock Inc.*, 526 F. Supp. 3d 533, 551 (D. Ariz. 2021) (same); *Prescott v. Slide Fire Sols., LP*, 341 F. Supp. 3d 1175, 1190 (D. Nev. 2018) (same).

## ARGUMENT

### I.  The PLCAA applies to Plaintiffs' claims.

The PLCAA "prevent[s] the use of … lawsuits to impose unreasonable burdens" on members of the firearms industry.  15 U.S.C. §7901(b)(4); *see also City of New York v. Beretta*, 524 F.3d 384, 394-95 (2d Cir. 2008) ("Congress explicitly found that the third-party suits that the Act bars are a direct threat to the firearms industry," and a "rationally perceived substantial effect on the industry [because] of the litigation that the Act seeks to curtail.").

Plaintiffs pleaded a "qualified civil liability action" for which Oasis is immune under the PLCAA.  Congress preempted Plaintiffs' lawsuit when it enacted the PLCAA to ensure access to firearms and ammunition would not be regulated by the vagaries of tort litigation and liability stemming from their criminal misuse.  Because Plaintiffs plead a qualified civil liability action and none of the PLCAA's exceptions apply, Plaintiffs' claims must be dismissed.

### A.  Plaintiffs pleaded a "qualified civil liability action."

Oasis is entitled to immunity because the allegations in Plaintiffs' pleadings, taken as true for purposes of dismissal, establish this is a "qualified civil liability action" under the PLCAA. 15 U.S.C. § 7903(5)(A).

A "qualified civil liability action is (1) a civil action (2) brought by any person (3) against a seller of a qualified product (4) for damages or other relief (5) resulting from the criminal or unlawful misuse of the product by a third party." *Academy*, 625 S.W.3d at 26.  A protected "seller" includes "a dealer . . . who is engaged in the business as such a dealer in interstate or foreign commerce and who is licensed to

engage in business as such a dealer under chapter 44 of Title 1" and "a person engaged in the business of selling ammunition … at the wholesale or retail level." 15 U.S.C. §7903(6)(b), (c).[1] The PLCAA defines "engaged in the business" to include any person who "devotes time, attention, and labor to the sale of ammunition as a regular course of trade or business with the principal objective of livelihood and profit through the sale or distribution of ammunition." 15 U.S.C. § 7903(1).  Accordingly, any person who regularly devotes time, attention, and labor to the sale or distribution of ammunition is entitled to PLCAA immunity.  A "qualified product" is "a firearm ... or ammunition ... or a component part of a firearm or ammunition, that has been shipped or transported in interstate or foreign commerce." 15 U.S.C. § 7903(4).

Plaintiffs' suit fits the PLCAA's definition of a qualified civil liability action. The damages Plaintiffs seek resulted, at least in part, from the "criminal or unlawful misuse" of a firearm by a third party: i.e., the Shooter. Under PLCAA, the "term 'unlawful misuse' means conduct that violates a statute, ordinance, or regulation as it relates to the use of a [firearm or ammunition]." 15 U.S.C. § 7903(9).  The Shooter's crimes satisfy the requirement. *See Academy*, 625 S.W.3d at 26 (concluding mass shooter's crimes satisfied requirement).

And, Oasis is a "seller" of a qualified product. *See* 15 U.S.C. § 7903(6)(C) (defining "seller"); 15 U.S.C. § 7903(1) (defining "engaged in business").  Plaintiffs allege Oasis sold ammunition to the Shooter and helped facilitate the transfer of the

---

[1]     The term "dealer" means "(A) any person engaged in the business of selling firearms at wholesale or retail . . ." 18 U.S.C. § 921(a)(11)

Daniel Defense rifle he purchased online. Pls.' Am. Compl. at ¶¶ 106 - 112. They also plead Oasis is a federal firearms licensee. *Id.* at ¶ 10.

As a result, the PLCAA requires dismissal unless an exception applies. *See* 15 U.S.C. §§ 7903(5)(A)(i)-(vi). For the reasons detailed below, no exception applies to any of Plaintiffs' claims.

## B. Plaintiffs did not plead an exception to PLCAA immunity, requiring dismissal.

Because the PLCAA applies, Plaintiffs bear the burden to plead and prove their claims against Oasis fall within one of the six exceptions to immunity. *See Academy*, 625 S.W.3d at 26. Those exceptions, listed in 15 U.S.C. § 7903(5)(A), are:

  i. an action brought against a transferor convicted under section 924(h) of Title 18, or a comparable or identical State felony law, by a party directly harmed by the conduct of which the transferee is so convicted;

  ii. an action brought against a seller for negligent entrustment or negligence per se;

  iii. an action in which a manufacturer or seller of a qualified product knowingly violated a State or Federal statute applicable to the sale or marketing of the product, and the violation was a proximate cause of the harm for which relief is sought, including—

    I. any case in which the manufacturer or seller knowingly made any false entry in, or failed to make appropriate entry in, any record required to be kept under Federal or State law with respect to the qualified product, or aided, abetted, or conspired with any person in making any false or fictitious oral or written statement with respect to any fact material to the lawfulness of the sale or other disposition of a qualified product; or

II.      any case in which the manufacturer or seller aided, abetted, or conspired with any other person to sell or otherwise dispose of a qualified product, knowing, or having reasonable cause to believe, that the actual buyer of the qualified product was prohibited from possessing or receiving a firearm or ammunition under subsection (g) or (n) of section 922 of Title 18;

iv.      an action for breach of contract or warranty in connection with the purchase of the product;

v.      an action for death, physical injuries or property damage resulting directly from a defect in design or manufacture of the product, when used as intended or in a reasonably foreseeable manner, except that where the discharge of the product was caused by a volitional act that constituted a criminal offense, then such act shall be considered the sole proximate cause of any resulting death, personal injuries or property damage; or

vi.      an action or proceeding commenced by the Attorney General to enforce the provisions of chapter 44 of Title 18 or chapter 53 of Title 26.

Here, Plaintiffs have wholly failed to plead any of the six exceptions, requiring dismissal of their claims. For example, Plaintiffs do not allege the Shooter was a prohibited purchaser. Plaintiffs do not allege the transfer to the Shooter constituted negligence per se, nor have they alleged the "predicate exception" described in 15 U.S.C. § 7905(5)(A)(iii) applies.[2] Plaintiffs also have not asserted a breach of contract, breach of warranty, or product liability claim against Oasis.

---

[2] The predicate exception applies when the manufacturer or seller of a qualified product knowingly violates a "State or Federal statute applicable to the sale or marketing of the product." 15 U.S.C. § 7903(5)(A)(iii). Because Texas law requires a statutory violation to support a claim for negligence per se, *Bryant v. Winn–Dixie Stores, Inc.*, 786 S.W.2d 547, 549 (Tex. App.—Ft. Worth 1990, writ denied), these two exceptions operate similarly for purposes of this case. Notably, Plaintiffs have not sued Oasis for non-compliance with any requirements applicable to over-the-counter sales.

11

The only *possible* exception Plaintiffs may argue in response is the negligent entrustment exception.  For the reasons discussed *infra* at §C, that exception does not apply to save Plaintiffs' claims from dismissal.

### C.  The negligent entrustment exception does not apply.

Plaintiffs frame their claims as negligent sale and negligent transfer. Pls.' Am. Compl. at ¶¶212 – 222; ¶¶223– 232.    But, both theories of liability are indistinguishable from negligent entrustment.  Plaintiffs allege Oasis "knew, or reasonably should have known, that the person to whom the ammunition and firearm being supplied, Ramos, was likely to use the product in a manner involving unreasonable risk of physical injury to other persons. . . ." Pls.' Am. Compl. at ¶ 230. These allegations fit the PLCAA's definition of negligent entrustment, which includes "supply[ing] a qualified product by a seller for use by another person when the seller knows, or reasonably should know, the person to whom the product is supplied to is likely to, and does, use the product in a manner involving unreasonable risk of physical injury to the person or others." 15 U.S.C. § 7903(5)(B).

While the PLCAA recognizes negligent entrustment as an exception to immunity, it does not create the cause of action.  15 U.S.C. § 7903(5)(C) (PLCAA does not create "public or private cause[s] of action or remed[ies]."); *Academy*, 625 S.W.3d at 30. "Accordingly, courts generally apply state law on negligent-entrustment claims in evaluating whether the exception applies."  *Academy*, 625 S.W.3d at 30; *see also Timperio v. Bronx-Lebanon Hosp. Ctr.*, 384 F. Supp. 3d 425, 434 (S.D.N.Y. 2019) (plaintiff must satisfy state law requirements for exception to apply); *Phillips v. Lucky Gunner, LLC*, 84 F.Supp.3d 1216, 1225 (D. Colo. 2015) ("Although the PLCAA

identifies negligent entrustment as an exception to immunity, it does not create a cause of action. Accordingly, the claim arises under state law.").[3]

Texas does not recognize a negligent entrustment action against the seller of a product. *Nat'l Convenience Stores, Inc. v. T.T. Barge Cleaning Co.*, 883 S.W.2d 684, 687 (Tex. App—Dallas 1994, writ denied) (Jan. 12, 1995) ("[W]e find negligent entrustment does not apply to the sale of a chattel."); *Jaimes v. Fiesta Mart, Inc.*, 21 S.W.3d 301, 304 (Tex. App.—Houston [1st Dist.] 1999, pet. denied); *Allen v. Wal-Mart Stores, LLC*, 2017 WL 978702, *11 (S.D. Tex. Mar. 14, 2017) (collecting cases), motion for relief from judgment denied, 2017 WL 7688383 (S.D. Tex. May 31, 2017).

Just last year, the Texas Supreme Court affirmed this rule in *Academy* where it rejected an argument that the PLCAA's negligent entrustment exception applied to Academy's sale of a gun to a mass shooter (at Sutherland Springs) because Academy allegedly "supplied the rifle to [the shooter] with reason to know that he was likely to use it in a manner involving unreasonable risk of harm." *In re Acad., Ltd.*, 625 S.W.3d at 30. The Texas Supreme Court stated: "we agree with Academy that no viable cause of action exists under Texas law for negligent entrustment based

---

[3]    Some courts have declined to undertake a claim-by-claim analysis to determine if each claim alleged meets a PLCAA exception to immunity *if* a viable statutory violation has been pled. Other courts, however, have more carefully considered the PLCAA's purpose and structure. *See Ramos v. Wal-Mart Stores, Inc.*, 202 F.Supp.3d 457, 464-66 (E.D. Pa. 2016) (discussing divergent view on whether PLCAA requires a claim-by-claim analysis to determine application of enumerated exceptions); *see Soto v. Bushmaster Firearms International, LLC*, 331 Conn. 53 (Conn. 2019) (reversing dismissal of action under the PLCAA based on a violation of a predicate statute but affirming dismissal of negligent entrustment action). Courts that have engaged in claim-by-claim analyses have taken the correct course because there is no basis in the PLCAA's plain language, structure or purpose to conclude that Congress intended for an action pleaded under one exception to serve as a "super exception" that eliminates immunity for all other causes of action, including ordinary negligence.

on a sale of chattel. In turn, we hold that the plaintiffs may not rely on the negligent-entrustment exception to pursue their claims." *Id.* at 30.

Similar allegations are at issue here, and the result must be the same. As noted above, Plaintiffs allege Oasis "knew, or reasonably should have known, that the person to whom the firearm being supplied, Ramos, was likely to use the product in a manner involving unreasonable risk of physical injury to other persons…." Pls.' Am. Compl. at ¶ 230. In line with the holding of *Academy*, no viable cause of action exists for negligent entrustment (or sale/transfer) of a chattel in Texas. Accordingly, the negligent entrustment exception cannot apply to Plaintiffs' claims against Oasis.

### D. Plaintiffs' negligent transfer and negligent sale claims are not exceptions to the PLCAA and fail.

Since none of the six enumerated exceptions to the PLCAA apply, Plaintiffs cannot maintain their claims of negligent sale and negligent transfer claims – even as general negligence theories couched in a non-viable, purported class action.[4] *See* Pls.' Am. Compl. at ¶ 179 (describing Oasis as "negligent"); ¶ 183 (contending Oasis did not exercise "reasonable care"). The PLCAA expressly preempts *all* general negligence actions resulting from the criminal or unlawful use of a qualified product. *Delana v. CED Sales, Inc.*, 486 S.W.3d 316, 321-22 (Mo. 2016).

*In re Estate of Kim*, 295 P.3d 380, 386 (Alaska 2013) holds the same. There, the Alaska Supreme Court held that "[t]he statutory exceptions do not include general negligence, and reading a general negligence exception into the statute would

---

[4] Oasis Outback reserves all rights with respect to challenging the viability of Plaintiffs' decision to re-frame their case as a class action under the Class Action Fairness Act.

make the negligence per se and negligent entrustment exceptions a surplusage." The Ninth Circuit came to the same conclusion in *Ileto*: "Congress clearly intended to preempt common-law claims, such as general tort theories of liability[,]" including "classic negligence" claims. *Ileto*, 565 F.3d at 1135-36.

Trial courts have followed suit. In *Jefferies v. District of Columbia*, 916 F. Supp. 2d 42, 46 (D.D.C. 2013), the court held the PLCAA "unequivocally" barred the plaintiff's negligence claim. *See also Phillips*, 84 F.Supp.3d at 1226; *Travieso*, 2021 WL 913746, at *6 ("the provisions of the [PLCAA] indicate Congress intended to generally preempt common law torts.").

Like the courts before it, this Court should decline to create exceptions to PLCAA immunity that Congress plainly did not provide and, in fact, sought to curb through enacting the PLCAA. *Ileto*, 565 F.3d at 1135-36 ("Congress clearly intended to preempt common-law claims, such as general tort theories of liability"). Accordingly, Oasis is entitled to immunity from Plaintiffs' claims under the PLCAA, and Plaintiffs' claims must be dismissed.

## II. Plaintiffs' claims against Oasis fail under Texas law.

Plaintiffs have not pleaded a viable cause of action that fits within one of the PLCAA's six exceptions, so the court need not reach this issue. But, even if it does, Plaintiffs' claims of negligent sale and negligent transfer still fail under Texas law.

First, for the reasons described above, Texas does not recognize a claim for negligent entrustment of a chattel. *See infra* at p. 12; *In re Academy, Ltd.*, 625 S.W.3d at 31.

Second, and more broadly, Oasis had no duty to prevent the Shooter's unforeseeable criminal conduct. In Texas, there generally "is no duty to control the conduct of third persons absent a special relationship between the defendant and the third party, such as employer, employee, independent contractor contractee, [or] parent child." *Allen v. Wal-Mart Stores, LLC*, No. CV H-16-1428, 2017 WL 978702, *10 (S.D. Tex. Mar. 14, 2017) (citing *Greater Houston Transp. Co. v. Phillips*, 801 S.W.2d 523, 525 (Tex. 1990)). Within these special relationships, there is a presumed right and ability to control the conduct of third persons, and in the absence of such a relationship, there is no duty to control a third person's conduct that caused harm. *Loram Maintenance of Way, Inc. v. Ianni*, 210 S.W.3d 593, 596 (Tex. 2006). Here, because Oasis did not have a recognized special relationship with the purchaser, it had no right or ability to control the purchaser's criminal use of the ammunition, and it did not have a duty to protect others from his criminal conduct.[5]

---

[5]     Even outside the context of traditional special relationships, Texas courts require the third party's conduct to be unquestionably the foreseeable result of the defendant's alleged negligence to impose a duty. *See, e.g.*, *El Chico Corp. v. Poole*, 732 S.W.2d 306, 311-12 (Tex. 1987) (tavern owed duty to not serve alcohol to a patron who it knew or should have known was intoxicated because "[t]he risk and likelihood of injury from serving alcohol to an intoxicated person whom the licensee knows will probably drive a car is as readily foreseen as injury resulting from setting loose a live rattlesnake in a shopping mall."); *Otis Engineering Corp. v. Clark*, 668 S.W.2d 307, 308-11 (Tex. 1983) (holding that employer who sent an employee home in an "extreme state of intoxication" owed a duty to person harmed by employee's negligence). The court in these cases imposed a duty on the tavern owner and employer to prevent another from driving while intoxicated because they had knowledge of both the person's intoxication and his intention to drive, and the foreseeable consequences of driving while intoxicated were not questioned. Another example is the property-liability line of cases. *See Timberwalk Apts. v. Cain*, 972 SW2d 749 (Tex. 1998); *De Lago Ptrs. v. Smith*, 307 SW 3d 762 (Tex. 2010).

Absent a special relationship, Courts applying Texas law have refused to impose a duty to control the conduct of another and ordered dismissal based only on the pleadings. For example, in *Allen*, supra, the court declined to recognize a duty on the part of Wal-Mart to protect the plaintiff's decedent from harming herself despite an allegation that the harm was reasonably foreseeable. The plaintiff sued Wal-Mart, alleging negligence and negligence per se based on the sale of an "abusable volatile chemical in the form of a compressed inhalant" that was ultimately purchased and used by the plaintiff's decedent. *Allen*, at 2017 WL 978702, at *2.  In response to Wal-Mart's motion to dismiss, the plaintiff argued that Wal-Mart owed the decedent a duty to refrain from this sale because it was "reasonably foreseeable" that the product would be "misused" based on the nature of the chemical and the decedent's purchase of a towel that "could be used as paraphernalia" to inhale the chemical. *Id.* at *3.   In rejecting plaintiffs' argument, the court held that the plaintiff's allegations did not support a finding that it was reasonably foreseeable that the decedent intended to use the chemical product and the towel to harm herself.  *Id.* at *16.

Even if the common law duty question is answered by considering only whether the harm inflicted on Plaintiffs was foreseeable, Texas courts hold that intentional criminal conduct is ***not*** foreseeable.  "Unlike alcohol, the sale of ammunition does not involve a product that impairs the user." *Cowart v. Kmart Corp.*, 20 S.W.3d 779, 784 (Tex. App.—Dallas 2000, pet. denied) (ammunition seller could not foresee that a sale would result in intentional misuse of the ammunition); *Chapman v. Oshman's Sporting Goods, Inc.*, 792 S.W.2d 785, 788 (Tex. App.—Houston [14th Dist.] 1990,

writ. denied) (holding intentional criminal conduct was not the foreseeable result of the sale of a handgun, even when to an underage buyer); *Holder v. Bowman*, No. 07-00-0126-CV, 2001 WL 62596 (Tex. App.—Amarillo Jan. 25, 2001, pet. denied) (similar).

The result here should be the same because there is no well-pled allegation that the purchaser's intentional criminal acts were foreseeable to Oasis based on information available to its sales agent. Plaintiffs allege that Oasis's owner talked to the Shooter and inquired as to how he could afford $3,000 worth of guns and ammunition. Pls.' Orig. Compl. at ¶¶ 109. They reference excerpts from the Texas House of Representatives report on the Robb Elementary Shooting that other shoppers —"store witnesses"— said the purchaser "appeared odd and looked like one of those school shooters" or was "giving off bad vibes." *Id.* at ¶ 111. These allegations, taken as true, are not enough to show Oasis could reasonably foresee the Shooter's murderous intent. *Twombly*, 550 U.S. at 570; *cf. Phillips*, 84 F. Supp. 3d at 1226 (no knowledge of criminal intent where Shooter purchased large quantity of ammunition). Nor can the Court find the purchaser's crimes were foreseeable based on "age" because—at least insofar as the federal government and Texas law are concerned—an eighteen-year-old is eligible to purchase the firearm and ammunition at issue in this case. Therefore, the Court cannot consider age as a factor in addressing foreseeability.

In sum, Oasis owed no duty to Plaintiffs, nor could it reasonably foresee the Shooter's horrific actions. Plaintiffs cannot maintain their negligence claims against Oasis—however they may be described—as a result.

## CONCLUSION

The PLCAA creates a substantive right of immunity for firearm and ammunition sellers not to be sued for harm caused by the criminal or unlawful misuse of qualified products. *See* 15 U.S.C. § 7902(a); *Academy*, 625 S.W.3d at 36; *see Beretta*, 524 F.3d at 394-95 ("Congress explicitly found that the third-party suits that the Act bars are a direct threat to the firearms industry," and "rationally perceived substantial effect on the industry [because] of the litigation that the Act seeks to curtail."). Plaintiffs' claims against Oasis fit within the PLCAA's immunity.

Oasis recognizes that Plaintiffs may disagree with the impact of the PLCAA on this case and the PLCAA more broadly. But, their remedy is legislative action, not affirmative litigation. There are strong reasons to defer to the legislative branches of government on matters relating to firearms and ammunition sales, which are already subject to extensive federal, state, and local regulations. 15 U.S.C § 7901(a)(4). Preserving the legislatures' role in firearms and ammunition policymaking was among the PLCAA's purposes: "[t]o preserve and protect the Separation of Powers doctrine" found in the U.S. Constitution. 15 U.S.C. § 7901(b)(6). Congress deemed the PLCAA necessary because "liability actions" were seen as "attempt[s] to use the judicial branch to circumvent the Legislative branch of government." 15 U.S.C. § 7901(a)(8). Therefore, if Plaintiffs want the PLCAA changed, they must look to Congress, not the courts.

For these reasons, Oasis asks the Court to order the immediate dismissal of Plaintiffs' claims against it.

Respectfully submitted,

**GRAY REED**

*/s/ A.M. "Andy" Landry, III*
_____
A.M. "Andy" Landry III
State Bar No. 11868750
J.J. Hardig, Jr.
State Bar No. 24010090
1300 Post Oak Blvd., Suite 2000
Houston, Texas 77056
(713) 986-7000 (Telephone)
(713) 986-7100 (Fax)
Email: alandry@grayreed.com
Email: jhardig@grayreed.com

-and-

**JEFFERSON CANO**

*/s/ Lamont A. Jefferson*
_____
Lamont A. Jefferson
State Bar No. 10607800
Emma Cano
State Bar No. 24036321
122 E. Pecan St., Suite 1650
San Antonio, Texas 78205
(210) 988-1808 (Telephone)
(210) 988-1808 (Fax)
Email: ljefferson@jeffersoncano.com
Email: ecano@jeffersoncano.com

**ATTORNEYS FOR DEFENDANT
OASIS OUTBACK, LLC**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was electronically served upon all counsel of record through the CM/ECF system on this 14th day of July, 2023.

_s/ A.M. "Andy" Landry, III_
A.M. "Andy" Landry, III