**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**DEL RIO DIVISION**

|  |  |
|---|---|
| **JASMINE C.,** an individual and on behalf of **M.C.**, a minor and her child, et al. | |
| *Plaintiffs,* | |
| v. | **Civil Action No.: 2:23-cv-00014-AM** |
| **DANIEL DEFENSE, LLC; DANIEL DEFENSE, INC; OASIS OUTBACK, LLC;** and **DOES 1-300**, | |
| *Defendants.* | |

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT OASIS OUTBACK, LLC'S MOTION TO DISMISS**

**TO HONORABLE CHIEF JUDGE ALIA MOSES**

COMES NOW, **JASMINE C.,** an individual and on behalf of **M.C.**, a minor and her child, et al., file this brief in opposition to the motion to dismiss the Plaintiffs' Amended Complaint filed by Oasis Outback, LLC. The Court should deny that motion for the reasons set forth below.

**(ECF DOC. 30)**

# TABLE OF CONTENTS

TABLE OF CONTENTS ........................................................................................................ i

TABLE OF AUTHORITIES ................................................................................................ ii

INTRODUCTION ................................................................................................................ 1

FACTS ................................................................................................................................. 2

STANDARD OF REVIEW ................................................................................................. 4

ARGUMENT ....................................................................................................................... 5

   I.   Plaintiffs' Claims Against Oasis Outback Fit Within PLCAA's Negligent
      Entrustment Exception ............................................................................................ 5

      A.  Overview of PLCAA ................................................................................... 6

      B.  PLCAA's Definition of Negligent Entrustment Controls What Conduct Is
          Exempted From PLCAA ............................................................................. 7

      C.  Oasis Outback's Reliance on *In re Academy* Is Misplaced ...................... 10

  II.   Plaintiffs Have Stated a Viable Claim Under Texas State Tort Law ............................ 13

      A.  Negligent Sale and Negligent Transfer Claims Are Distinct From Negligent
          Entrustment ................................................................................................ 13

      B.  Oasis Outback Owed a Duty to Third Parties Foreseeably Harmed by
          Its Conduct ................................................................................................. 15

  III.   In the Alternative, the Court Should Grant Plaintiffs Leave to Amend
      Their Complaint ......................................................................................................... 20

CONCLUSION ................................................................................................................... 21

CERTIFICATE OF SERVICE ............................................................................................ 23

## TABLE OF AUTHORITIES

**Cases**

*Acosta v. Hensel Phelps Constr. Co.*, 909 F.3d 723 (5th Cir. 2018) ............................... 9

*Allen v. Wal-Mart Stores*, No. H-16- 1428, 2017 WL 978702 (S.D. Tex. Mar. 14, 2017) .......... 16

*American National Bank of Beaumont v. Sneed's Shipbuilding, Inc.*, 703 S.W.2d 336
    (Tex. App. 1985) .......................................................................... 14

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) ...................................... 4

*Cervini v. Cisneros*, 593 F. Supp. 3d 530 (W.D. Tex. 2022) ................................ 4

*Chapman v. Oshman's Sporting Goods, Inc.*, 792 S.W.2d 785 (Tex. App. 1990) ................... 19

*Cowart v. Kmart Corp.*, 20 S.W.3d 779 (Tex. App. 2000) .................................... 19

*Cuvillier v. Taylor*, 503 F.3d 397 (5th Cir. 2007) ....................................... 5

*Delana v. CED Sales Inc.*, 486 S.W.3d 316 (Mo. 2016) ............................... 8, 10, 12

*El Chico Corp. v. Poole*, 732 S.W.2d 306 (Tex. 1987) ..................................... 15

*Erwin v. Dunn*, 201 S.W.2d 240 (Tex. Civ. App. 1947) ..................................... 14

*F.F.P. Operating Partners, LP v. Duenez*, 237 S.W.3d 680 (Tex. 2007) ...................... 15

*Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305 (5th Cir. 2002) ........ 20

*Greater Houston Transp. Co. v. Phillips*, 801 S.W.2d 523 (Tex. 1990) ..................... 20

*Griggs v. Hinds Junior College*, 563 F.2d 179 (5th Cir. 1977) ............................ 20

*Holder v. Bowman*, No. 07-00-0126-CV, 2001 WL 62596 (Tex. App. Jan. 25, 2001) ............... 19

*Hulsebosch v. Ramsey*, 435 S.W.2d 161 (Tex. Civ. App. 1968) .............................. 16

*Ileto v. Glock, Inc.*, 565 F.3d 1126 (9th Cir. 2009) ..................................... 8

*In re Academy, Ltd.*, 625 S.W.3d 19 (Tex. 2021) .................................. passim

*In re Estate of Kim*, 295 P.3d 380 (Alaska 2013) ........................................ 8

*In re Katrina Canal Breaches Litig.*, 495 F.3d 191 (5th Cir. 2007) ....................... 4

*Jefferies v. District of Columbia*, 916 F. Supp. 2d 42 (D.D.C. 2013) ..................... 8

*Johnson v. Sw. Rsch. Inst.*, 210 F. Supp. 3d 863 (W.D. Tex. 2016) ....................... 4

*Kroger Co. v. Elwood*, 197 S.W.3d 793 (Tex. 2006) ...................................... 15

*Meese v. Keene*, 481 U.S. 465 (1987) ................................................... 9

*Morris v. Barnette*, 553 S.W.2d 648 (Tex. Civ. App. 1977) ............................... 18

*Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546 (Tex. 1985) ......................... 16, 17, 18

*Peek v. Oshman's Sporting Goods, Inc.*, 768 S.W.2d 841 (Tex. App. 1989) ........................ 15, 16

*Phan Son Van v. Pena*, 990 S.W.2d 751 (Tex. 1999) .................................................... 17

*Phillips v. Lucky Gunner*, *LLC*, 84 F. Supp.3d 1216 (D. Colo 2015) ...................................... 12, 19

*Prescott v. Slide Fire Sols., LP*, 410 F. Supp. 3d 1123 (D. Nev. 2019) ................................ 12

*Russello v. United States*, 464 U.S. 16 (1983) ......................................................... 9

*Schydlower v. Pan Am. Life Ins. Co.*, 231 F.R.D. 493 (W.D. Tex. 2005) ................................... 20

*Soc'y for Sav. in Cleveland v. Bowers*, 349 U.S. 143 (1955) ......................................... 10

*Stanfield v. Neubaum*, 494 S.W.3d 90 (Tex. 2016) ...................................................... 18

*Stenberg v. Carhart*, 530 U.S. 914 (2000) .............................................................. 9, 12

*Sw. Key Program v. Gil-Perez*, 81 S.W.3d 269 (Tex. 2002) ............................................... 17

*Tex. & Pac. Ry. Co. v. Bigham*, 38 S.W. 162 (Tex. 1896) ............................................... 18

*Timperio v. Bronx-Lebanon Hospital Center*, 384 F. Supp. 3d 425 (S.D.N.Y. 2019) ...................... 12

*Tisdale v. Pagourtzis*, No. 3:20- cv-140, 2020 WL 7170491 (S.D. Tex. Dec. 7, 2020) ................... 14

*Travis v. City of Mesquite*, 830 S.W.2d 94 (Tex. 1992) ................................................ 16

*United States v. Miami Univ.*, 294 F.3d 797 (6th Cir. 2002) .......................................... 10

*Univ. of Tex. M.D. Anderson Cancer Ctr. v. McKenzie*, 578 S.W.3d 506 (Tex. 2019) .................... 17

*Walkoviak v. Hilton Hotels Corp.*, 580 S.W.2d 623,  (Tex. Civ. App. 1979) ............................ 18

*Wal-Mart Stores, Inc. v. Tamez*, 960 S.W.2d 125 (Tex. App. 1997)..................................... 13, 16

*Western Air Lines v. Bd. of Equalization of State of S.D.*, 480 U.S. 123 (1987)....................... 12

## Statutes

15 U.S.C. § 7902(a) ..................................................................................... 6

15 U.S.C. § 7903(5) .................................................................................. 5, 6, 7, 9

## INTRODUCTION

Regrettably, this court must preside over yet another recurring and deeply tragic occurrence where, once again, elementary age children and their dedicated teachers have been murdered or physically and emotionally maimed by a deeply troubled young man wielding a semi-automatic machine gun, who, in his delusion colored by glorification of violence perpetuated by both video games and targeted Defendant Daniel Defense's advertisements, mercilessly released his own childhood trauma and pain upon unsuspecting beautiful and buoyant young children at school.

Just barely eighteen years old, Ramos, who, despite never firing a gun, fantasized about the power and instant destruction that automatic guns could provide him. To manifest that fantasy, he turned to firearm manufacturer, Defendant Daniel Defense ("Daniel Defense" & "Daniel") who, due to a concerted and intentional marketing campaign specifically aimed at the demographic of young, isolated, troubled, and violent young men, successfully won over and wooed Salvador Ramos.

In facilitating Ramos' fantasy into reality, Oasis Outback ("Outback"), the gun store in Uvalde who placed the guns and ammunition into Ramos's hands is equally responsible for the death, destruction and trauma that was unleashed on students, teachers, CISD staff, the citizens of Uvalde and the United States on May 24, 2022.

As a federal firearms licensee, Oasis Outback had a legal duty to refrain from selling guns to prospective purchasers who it knew, or reasonably should have known, were planning to use them to harm others. Given the blatantly obvious red flags that Ramos presented, Oasis Outback's assent to the various sales is a glaringly obvious breach of its legal duty as a licensed procurer of arms and accessories.

Plaintiffs in this case have brought two claims against Oasis Outback: (i) negligent transfer of the Daniel Defense AR-15-style rifle Ramos purchased online from the manufacturer and picked up at Oasis; and (ii) negligent sale by Oasis Outback of another AR-15-style rifle and ammunition. In its motion to dismiss Oasis argues 1) that Plaintiffs' claims are barred by Protection of Lawful Commerce in Arms Act ("PLCAA"); and 2) that Plaintiffs' claims are barred by Texas Law.

As set forth more fully below, both of Oasis Outback's arguments fail. Its motion to dismiss is properly denied.

## FACTS

On his eighteenth birthday, May 16, 2022, Salvador Ramos went online and made two purchases. Am. Compl. ¶ 102. Primarily, he paid $1,761.50 to purchase 1,740 rounds of ammunition for use in an AR-15 rifle from an online retailer. Secondly, he steered his browser to Daniel Defense's webstore, where he ordered a Daniel Defense DDM4 V7 AR-15-style rifle. *Id.* Ramos requested that the DDM4 V7 be shipped to Oasis Outback, a gun store in Uvalde. Ramos paid $2,054.28 to purchase the rifle. *Id.*

The next day, May 17, 2022, Ramos went to Oasis Outback in person and bought a Smith & Wesson M&P15 assault rifle for $1,081.42. Am. Compl. ¶ 103.

The day after, May 18, 2022, Ramos returned to Oasis Outback to buy an additional 375 rounds of AR-15 ammunition. Am. Compl. ¶ 104.

Thereafter, on May 20, 2022, Ramos returned to Oasis Outback to pick up his Daniel Defense assault rifle. Am. Compl. ¶ 105. Upon information and belief, Ramos paid a $50 transfer fee to Oasis Outback in order to take possession of his Daniel Defense rifle. *Id.* Thus, Ramos made three visits to Oasis within a four-day period. In that short period, Ramos had purchased and acquired over $3,000 worth of guns and ammunition, including two AR-style rifles. Oasis Outback

2

was required to report this multiple sale of rifles and ammunition to the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF"), pursuant to a letter issued by the ATF on July 12, 2011. *Id.* Fulfilling its reporting requirements, however, does not absolve Oasis Outback from its obligation to block a sale on other relevant grounds, including when Oasis Outback knew or reasonably should have known that the purchaser was likely to harm himself or others. *Id.*

On Ramos's May 20th visit to Oasis Outback to pick up his rifle, he also had employees install a holographic weapon sight on the rifle. Am. Compl. ¶ 106. Such a sight allows a user to look through a small glass window and see holographic crosshairs superimposed on a target. Holographic sights are designed for rapid short-range shooting and help users quickly acquire targets without having to undergo marksmanship training. *Id .* Once the crosshairs highlight a target, the user can fire. Additionally, the rifle's holographic sight accessory permits shooters to keep both eyes open in order to identify more targets in their peripheral vision. *Id.*

Oasis Outback had a duty to refrain from selling weapons to the recently turned 18-year-old shooter, who it knew or reasonably should have known, was likely to harm himself or others. Am. Compl. ¶ 107. The shooter was described by patrons of the store as displaying a nervous disposition and behaving suspiciously. *Id.* One witness at the store said Ramos "appeared odd and looked like one of those school shooters." *Id.* He was wearing all black, and was described as giving off "bad vibes." 1 *Id.* The owner of Oasis Outback described him as alone and quiet, and questioned Ramos about how he could afford $3,000 worth of rifles. *Id.* He also knew Ramos was urgently purchasing a massive arsenal of firepower within days of turning the legal age of 18 years

---

[1] H.R. Robb Comm Interim Rep, Investigative Comm on the Robb Elementary Shooting, 87th Session, at 36 (Tex. 2022).

old.  Nevertheless, Oasis, with profit in mind, proceeded with the sale and sold this readily apparent troubled youth the rifles and ammunition.  *Id.*

Oasis Outback knew or should have known that Ramos was not purchasing the assault rifles for recreational purposes. Am. Compl. ¶ 108. The shooter was purchasing two extraordinarily lethal assault weapons and enough ammunition to fight off a small army, as well as a holographic sight and Hellfire Gen 2 trigger system, all within days of his 18th birthday and for a cost that was incommensurate with his young age and disposition. *Id.* Ramos' intended, non-recreational use of his purchases from Oasis hauntingly transpired four days later. *Id.*

On May 24, 2022, Robb Elementary was poised to celebrate the end of the 2022 school year with an awards ceremony for its students and parents. Am. Compl. ¶ 109. Believing that this would also be the day that his classmates from Uvalde High would reconvene at Robb Elementary as a traditional parting gesture before graduation, Ramos planned to attend and carry out his intended massacre. *Id.* On that fateful morning, after a heated exchange with his grandmother over a mobile phone plan, Ramos shot his grandmother and set off in her truck towards Robb Elementary school. *Id.*

## STANDARD OF REVIEW

 "In deciding a 12(b)(6) motion, a 'court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'" *Cervini v. Cisneros*, 593 F. Supp. 3d 530, 533 (W.D. Tex. 2022) (quoting *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007)). "Under Rule 12(b)(6), a claim should not be dismissed unless the court determines that it is beyond doubt that the plaintiff cannot prove a plausible set of facts that support the claim and would justify relief." *Johnson v. Sw. Rsch. Inst.*, 210 F. Supp. 3d 863, 867 (W.D. Tex. 2016) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In other words, "[t]o survive a Rule 12(b)(6) motion

4

to dismiss, a complaint 'does not need detailed factual allegations,' but must provide the plaintiff's grounds for entitlement to relief— including factual allegations that when assumed to be true 'raise a right to relief above the speculative level.'" *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (quoting *Twombly*, 550 U.S. at 570).

## ARGUMENT

Oasis Outback's motion to dismiss raises two issues for the Court to resolve. First, is PLCAA available as a defense? And second, have Plaintiffs stated a claim under state tort law? The answer to the first question is no. PLCAA is not available as a defense, because—as Oasis Outback admits— Plaintiffs have stated a claim that fits PLCAA's definition of negligent entrustment, and such claims are exempted from PLCAA's coverage. As for the second question, the Court should answer that in the affirmative because Plaintiffs have stated valid claims under Texas tort law.

### I.   Plaintiffs' Claims Against Oasis Outback Fit Within PLCAA's Negligent Entrustment Exception

Although PLCAA prohibits many claims against gun companies, Plaintiffs' claims against Oasis Outback may proceed because they fall into PLCAA's exception for "negligent entrustment," which is a defined term in the statute. 15 U.S.C. § 7903(5)(A)(ii), (B).  Oasis Outback first argues that Plaintiffs "did not plead an exception to PLCAA immunity, requiring dismissal." See Oasis Outback's Motion to Dismiss ECF 30 (hereinafter "Br.") at pg. 10. However, even Oasis understands that this argument is specious. Oasis Outback's very next argument acknowledges that both of Plaintiffs' "theories of liability are indistinguishable from negligent entrustment."

While Oasis Outback attempts to confuse matters by conflating Texas' tort of "negligent entrustment" with PLCAA's statutory exemption for "negligent entrustment," the former has no role to play in this litigation because Plaintiffs have not brought a state law claim for negligent entrustment. Instead, the rules of statutory construction direct this Court to look to the definition of negligent entrustment provided by PLCAA to determine whether Plaintiffs' allegations fit within it. *Id.* § 7903(5)(B). If the allegations meet the requirements of the statutory definition, then PLCAA protection does not apply. The Court must then evaluate whether Plaintiffs have asserted a viable tort claim against Oasis Outback, since PLCAA does not create any causes of action. *Id.* § 7903(5)(C).

### A.  Overview of PLCAA

PLCAA provides that "[a] qualified civil liability action may not be brought in any Federal or State court." 15 U.S.C. § 7902(a). A "qualified civil liability action" is defined as:

> [A] civil action . . . brought by any person against a manufacturer or seller of a qualified product . . . for damages . . . or other relief, resulting from the criminal or unlawful misuse of a qualified product by the person or a third party. . ..

*Id*. § 7903(5)(A). Plaintiffs do not dispute that if its case against Oasis Outback did not fit into one of PLCAA's exceptions, it would be a "qualified civil liability action," and dismissal would be warranted. But there are six exceptions to PLCAA's protection, and the two claims against Oasis Outback fit within one of them: the negligent entrustment exception. *Id.* § 7903(5)(A)(ii) ("The term 'qualified civil liability action' . . . shall not include . . . an action against a seller for negligent entrustment"). PLCAA defines negligent entrustment as:

> the supplying a qualified product by a seller for use by another person when the seller knows, or reasonably should know, the person to whom the product is supplied to is likely to, and does, use the product in a manner involving unreasonable risk of physical injury to the person or others.

6

15 U.S.C. § 7903(5)(B).

Plaintiffs have demonstrated that Oasis Outback's conduct meets this definition. They have alleged that Oasis Outback supplied three qualified products (two AR-15-style rifles and ammunition) for use by Ramos when Oasis Outback reasonably should have known that he was likely to (and did) use the products in a manner involving unreasonable risk of physical injury to others. Am. Compl. ¶¶ 106-112, 212-220, 226-228.

If a plaintiff has asserted allegations that fit within PLCAA's definition of negligent entrustment, then PLCAA's protections fall away, and the Court must determine whether he or she has stated a viable state law claim. This is because PLCAA does not "create a public or private cause of action" 15 U.S.C. § 7903(5)(C), for negligent entrustment or otherwise. Instead, if a civil action alleges that a defendant has acted in a manner that satisfies PLCAA's negligent entrustment exception—as the Amended Complaint here does—then a court moves to assess whether the action properly alleges state law claims that fit within the same definition, regardless of what those state law claims are denominated. As discussed in Section II below, Plaintiffs here have done just that.

## B. PLCAA's Definition of Negligent Entrustment Controls What Conduct Is Exempted From PLCAA

Oasis Outback makes two principal arguments for why PLCAA's immunity should apply here, but both rely on faulty premises. First, Oasis Outback argues that because Plaintiffs' claims are designated as "negligent transfer" and "negligent sale" claims, they do not fall within PLCAA's "negligent entrustment" exception. Br. 14-15 (citing cases). Not so. For purposes of PLCAA protection, the state-law name of the claim is immaterial to the analysis. "[A] state-law claim may continue to be asserted, even if it is not denominated as a 'negligent entrustment' claim

under state law, if it falls within the definition of a 'negligent entrustment' claim provided in the PLCAA." *Delana v. CED Sales Inc.*, 486 S.W.3d 316, 324 (Mo. 2016) (internal citations omitted). In *Delana*, the Missouri Supreme Court concluded that "[i]rrespective of what the claim is called, Missouri law authorizes claims that fit within the PLCAA's definition of a non-preempted claim for 'negligent entrustment.'" *Id.* at 326. So too here.  As explained below, Texas law authorizes non-preempted claims that fit within PLCAA's definition of negligent entrustment (even though not denominated as "negligent entrustment," under Texas law).

Oasis Outback's citations to the *Estate of Kim, Ileto* and *Jefferies* (Br. at 14-15) are of no help to it, as none of those cases involved the question at issue here: whether a claim denominated as "negligent sale" or "negligent transfer" can proceed under PLCAA's negligent entrustment claim if it meets the elements of PLCAA's statutory definition. Those cases simply remarked that general negligence claims—ones that did not fit into PLCAA's exceptions—were barred by PLCAA. *In re Estate of Kim*, 295 P.3d 380, 386 (Alaska 2013); *Ileto v. Glock, Inc.*, 565 F.3d 1126, 1135 n.6 (9th Cir. 2009); *Jefferies v. District of Columbia*, 916 F. Supp. 2d 42, 46 (D.D.C. 2013). Once again, *Delana* is instructive on this matter. While the Missouri Supreme Court explained that how a claim is labeled does not matter so long as that claim fits into PLCAA's "negligent entrustment" definition, 486 S.W.3d at 324-26, it simultaneously rejected an alternative ordinary negligence claim brought by the plaintiff in that case because it did not fit into PLCAA's enumerated exceptions, including the "negligent entrustment" definition. *Id.* at 320-22.

Additionally, Oasis Outback argues that, even though Plaintiffs' allegations meet PLCAA's definition of "negligent entrustment," this Court should apply state law to determine whether that exception applies here. Br. at 13-14. But PLCAA is a federal statute, and its applicability is a question of federal law, not state law.

8

Congress chose to define "negligent entrustment," and that choice must be given meaning. "When a statute includes an explicit definition, we must follow that definition . . . ." *Stenberg v. Carhart*, 530 U.S. 914, 942 (2000) (rejecting an Attorney General's narrowing interpretation of a statute when that statute included an "explicit definition"). Because the task is "to construe legislation as it is written," courts interpreting statutes recognize and defer to "the Legislature's power to define the terms that it uses in legislation." *Meese v. Keene*, 481 U.S. 465, 484-85 (1987). Here, "negligent entrustment" is defined by PLCAA, and there is no dispute amongst the parties that Plaintiffs' allegations fit the definition. See Br. at 12. That should end the inquiry.

This conclusion is bolstered by the fact that in the exact same subsection of PLCAA, Congress included an exception for claims of negligence per se but did not provide a definition of that term. 15 U.S.C. § 7903(5)(A)(ii). "'[W]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposefully in the disparate inclusion or exclusion[.]'" *Acosta v. Hensel Phelps Constr. Co.*, 909 F.3d 723, 732 (5th Cir. 2018) (quoting *Russello v. United States*, 464 U.S. 16, 23 (1983)). The choice, then, to define negligent entrustment expressly indicates that Congress intended a uniform, federal definition that was not subject to variation from state to state.[2]

---

[2] This approach also has the benefit of being consistent with PLCAA's legislative history. The Senate debates included statements from PLCAA's sponsors stating that the bill was not intended to provide immunity to gun sellers when they sell firearms to people when they know or should know that those weapons could be used to harm others. *See, e.g.*, Statement of Senator Larry Craig (bill co-sponsor and chief author), 151 Cong. Rec. S9059 (daily ed. July 27, 2005) ("Under S. 397, plaintiffs will have the opportunity to argue that their case falls under the exception, such as violations of Federal and State law, negligent entrustment, knowingly transferring to a dangerous person. That is what that all means, that you have knowingly sold a firearm to a person who cannot legally have it or who you have reason to believe could use it for a purpose other than intended. *That all comes under the current definition of Federal law*." (emphasis added)).

This approach—follow federal law and give meaning to the words Congress chose—was taken by the Missouri Supreme Court in *Delana*, which first looked to PLCAA's definition of negligent entrustment and then turned to state law in search of a tort that fit the federal definition. 486 S.W.3d at 324-26. PLCAA's supplied definition dictates the types of claims that may proceed, and those include the two claims that Plaintiffs bring here. PLCAA's text and legislative history strongly suggest that Congress, through this definition, intended to create a uniform standard across the country.

### C.  Oasis Outback's Reliance on *In re Academy* Is Misplaced

Oasis Outback relies primarily on *In re Academy, Ltd.*, 625 S.W.3d 19 (Tex. 2021), to support its argument that Plaintiffs have not satisfied PLCAA's negligent entrustment exception. But *Academy's* interpretation of federal law is neither binding nor persuasive, and this Court need not (and should not) follow its textual and flawed analysis. *See Soc'y for Sav. in Cleveland v. Bowers*, 349 U.S. 143, 151 (1955) (holding that the federal courts are not bound by state court decisions on federal law); *United States v. Miami Univ.*, 294 F.3d 797, 811 (6th Cir. 2002) (citations omitted) ("[F]ederal courts owe no deference to a state court's interpretation of a federal statute.").

In Academy, the plaintiffs (victims of the Sutherland Springs shooting) brought a state law "negligent entrustment" claim for the sale of the weapon used in the shooting. *Academy*, 625 S.W.3d at 24. The court held that Texas tort law did not recognize negligent entrustment liability for the sale of a product (as opposed to a loan of a product) and therefore held that the plaintiff had not stated a viable negligent entrustment claim. *Id*. at 31 (refusing to extend "a common-law negligent entrustment claim to a sale"). Neither party briefed the issue of the correct sequence for evaluating claims under PLCAA's negligent entrustment section (first look to the federal definition,

then look for a state tort that fits). The *Academy* court disregarded PLCAA's definition of negligent entrustment and reasoned (mistakenly) that Texas negligent entrustment law was relevant to the question of whether PLCAA's negligent entrustment exception applied. Id. at 32 n.14. It stated that "[b]ecause the PLCAA expressly disclaims the creation of any cause of action, and negligent entrustment is a creature of state law, state law necessarily informs the application of the negligent-entrustment exception." *Id*.; see also *Id*. at 30.

But this interpretation gets the analysis exactly backwards. The correct approach is to turn to PLCAA's definition first and then evaluate whether a viable state tort claim fits within that definition. Instead, the Academy court first turned to state law, and, after determining that Texas tort law does not recognize a negligent entrustment claim for a sale, it disregarded PLCAA's definition of negligent entrustment and mandated that the statutory exception fit the definition of the tort under Texas law.[3]

In a concurring opinion in *Academy*, Justice Boyd admonished the majority opinion for "utiliz[ing] the Texas common-law meaning of 'negligent entrustment' to determine whether the PLCAA bars the plaintiffs' claim," before explaining (correctly) that "PLCAA does not leave room for this Court to supplement the Act's definition of 'negligent entrustment' with Texas common law." *Id.* at 38 (Boyd, J., concurring). Noting that "Courts must adhere to legislative definitions of terms when they are supplied," Justice Boyd emphasized that "PLCAA's statement that it does not 'create' a cause of action does not somehow alter its definition or exception for

---

[3] *Academy*'s reasoning on this issue was likely informed by the fact that the plaintiffs had brought a claim that was not viable under state tort law. *Id.* at 32 n.14 ("Absent a valid state-law cause of action, as is the case here, no cause of action exists to fall within [the negligent entrustment] exception. Accordingly, we do not read PLCAA to allow a nonexistent state-law claim to proceed."). But here, unlike in *Academy*, Plaintiffs have brought viable state tort claims: negligent transfer and negligent sale. Thus, the reasoning that informed *Academy*'s erroneous reading of federal law simply does not apply.

'negligent entrustment' claims." *Id.* at 40 (Boyd, J., concurring). The reasoning of the *Academy* concurrence, which echoes the two-step approach taken by *Delana*, reflects the plain text of PLCAA and long-standing principles of federal statutory interpretation. *See Stenberg*, 530 U.S. at 942 ("When a statute includes an explicit definition, we must follow that definition"); *Western Air Lines v. Bd. of Equalization of State of S.D.*, 480 U.S. 123, 129 (1987).

The two cases cited by the *Academy* majority (and by Oasis Outback) for its erroneous conclusion on federal law, *Phillips v. Lucky Gunner, LLC*, 84 F. Supp.3d 1216 (D. Colo 2015) and *Prescott v. Slide Fire Sols., LP*, 410 F. Supp. 3d 1123 (D. Nev. 2019), do not analyze the question that is before this Court. In neither case did the plaintiffs plead a viable negligent entrustment claim under any established definition of negligent entrustment. In *Prescott*, the plaintiffs could not plead that the defendant (a manufacturer of bump stocks) sold, or otherwise entrusted, the shooter with the relevant qualified product. *Prescott*, 410 F. Supp. 3d at 1133. In *Phillips*, the plaintiffs did not plead facts suggesting that the defendant knew, or had reason to know, that the purchaser was an incompetent entrustee, which was fatal to their attempt to plead a state tort that fit PLCAA's definition of negligent entrustment. *Phillips*, 84 F. Supp. 3d at 1225-26. A third case cited by Oasis Outback fails for the same reason: in *Timperio v. Bronx-Lebanon Hospital Center*, 384 F. Supp. 3d 425, 434 (S.D.N.Y. 2019), the plaintiff failed to plead knowledge of the entrustee's incompetence.

Disregarding supplied definitions in federal law undermines Congress's purpose for passing laws like PLCAA that seek to set a uniform standard for handling claims across the country. Congress created a uniform standard to evaluate which claims are exempted from PLCAA protection, and that definition does not vary from jurisdiction to jurisdiction. In sum, PLCAA's exception for negligent entrustment, as defined by the statute, is a matter of federal

law, and all parties agree that Plaintiffs' allegations "fit squarely" within it. Br. at 12. Thus, PLCAA is not a bar to Plaintiffs' claims.

## II.      Plaintiffs Have Stated a Viable Claim Under Texas State Tort Law

Oasis Outback makes two separate arguments about the viability of Plaintiffs' claims under Texas tort law. First: Oasis Outback argues that the torts of negligent sale and transfer "are indistinguishable from negligent entrustment," and therefore, *Academy* mandates the dismissal of Plaintiffs' claims. Br. at 15. And second: Oasis Outback argues it did not owe a duty of care towards third parties foreseeably injured by its negligent sale and transfer of firearms and ammunition to Salvador Ramos. Br. at 16-18. Both arguments are at odds with foundational principles of Texas law.

### A. Negligent Sale and Negligent Transfer Claims Are Distinct From Negligent Entrustment

Oasis Outback devotes several paragraphs of its brief to arguing that Texas does not recognize a cause of action for negligent entrustment of a chattel, before arguing that because the allegations in the complaint are "similar" to what one would make for a negligent entrustment claim under Texas law, they are foreclosed here. Br. at 13-14. This argument ignores the key difference between negligent entrustment and negligent sale/transfer liability under Texas tort law: negligent entrustment only applies to loans. *Academy*, 625 S.W. 3d at 31. In Texas, plaintiffs may bring suit for negligent sale and transfer where, as here, the seller/transferor reasonably should have known that they were providing a dangerous instrumentality to someone who was likely to use it in a manner involving unreasonable risk of physical injury to himself and others. *See, e.g.*, *Wal-Mart Stores, Inc. v. Tamez*, 960 S.W.2d 125, 130-31 (Tex. App. 1997) (holding that a seller has a "common-law duty to act reasonably in selling ammunition" to a customer, but

13

deciding that the plaintiff had not alleged facts sufficient to show that the duty had been breached because there was no evidence that the customer exhibited any signs of immaturity or incompetence or any form of aberrant behavior); *see also Tisdale v. Pagourtzis*, No. 3:20- cv-140, 2020 WL 7170491, at *5 (S.D. Tex. Dec. 7, 2020) ("Texas courts have . . . recognized, under common-law negligence principles and without the assistance of negligence per se, that ammunition sellers owe a duty of ordinary care toward third parties who might be injured by an unreasonable sale of ammunition.") (collecting Texas cases).

Liability for negligence in the context of a sale or permanent transfer has been recognized outside of the context of firearms and ammunition as well. In *Erwin v. Dunn*, a Texas appellate court reversed a directed verdict for the defense and found a factual dispute regarding whether a retailer that sold fireworks to a minor was negligent in the sale. 201 S.W.2d 240, 242-43 (Tex. Civ. App. 1947). And in *American National Bank of Beaumont v. Sneed's Shipbuilding, Inc.*, the state appellate court upheld a jury verdict against a bank, finding sufficient evidence that the bank was negligent in transferring funds to non-interest-bearing account. 703 S.W.2d 336, 339 (Tex. App. 1985).

Oasis Outback's argument overlooks that what separates negligent sale and permanent transfer claims from negligent entrustment claims in Texas is that the former involves a change of title of the chattel, and the latter does not. *In re Acad., Ltd.*, 625 S.W.3d at 31. PLCAA, like many states, does not draw this distinction and treats both claims as negligent entrustment,[4] but

---

[4] Many states have held that negligent entrustment is applicable to sellers of chattel. *See, e.g.*, *Shirley v. Glass*, 308 P.3d 1, 4-9 (Kan. 2013); *Estate of Kim v. Coxe*, 295 P.3d 380, 394, n.94 (Alaska 2013); *West v. E. Tennessee Pioneer Oil Co.*, 172 S.W.3d 545, 555 (Tenn. 2005); *Hamilton v. Beretta U.S.A. Corp.*, 750 N.E.2d 1055, 1064 (N.Y. 2001), *Kitchen v. K-Mart Corp.*, 697 So. 2d 1200, 1208 (Fla. 1997). A few states, like Texas, have rejected applying the tort of

Texas's negligent sale and transfer torts fit the PLCAA definition just the same. In *Academy*, the Texas Supreme Court chose not to follow the lead of other states and instead emphasized "that 'the basis for imposing liability on the owner of the thing entrusted to another is that ownership of the thing gives the right of control over its use.'" *Id.* (quoting *F.F.P. Operating Partners, LP v. Duenez*, 237 S.W.3d 680, 686 (Tex. 2007)). The Texas Supreme Court, of course, has the final say over what constitutes negligent entrustment under Texas law. But here, Plaintiffs did not bring Texas negligent entrustment claims and have alleged different, recognized torts under Texas law—negligent sale and transfer—that both fit within PLCAA's definition of negligent entrustment.

**B.  Oasis Outback Owed a Duty to Third Parties Foreseeably Harmed by Its Conduct**

Texas law recognizes liability for sellers of products whose conduct foreseeably harms third parties, even where that harm is ultimately caused by the purchaser's criminal acts. "'Negligence' [breach of duty] is the failure to do that which a person of ordinary prudence would have done under the same or similar circumstances, or doing that which a person of ordinary prudence would not have done under the same or similar circumstances." *Peek v. Oshman's Sporting Goods, Inc.*, 768 S.W.2d 841, 845-46 (Tex. App. 1989) (brackets in original) (citation omitted). "Whether a duty exists is a threshold inquiry and a question of law. . .." *Kroger Co. v. Elwood*, 197 S.W.3d 793, 794 (Tex. 2006). And "duty is the function of several interrelated factors, the foremost and dominant consideration being foreseeability of the risk." *El Chico Corp. v. Poole*, 732 S.W.2d 306, 311 (Tex. 1987) (citation omitted).

---

negligent entrustment to sales of chattel. *See, e.g.*, *Laurel Yamaha, Inc. v. Freeman*, 956 So. 2d 897, 903-04 (Miss. 2007).

"Texas appellate courts have found that a standard of ordinary care on the part of a firearms seller does exist toward a third party who might be injured by an unreasonable sale of a firearm." *Tamez*, 960 S.W.2d at 130 (citing *Peek*, 768 S.W.2d at 847, and *Hulsebosch v. Ramsey*, 435 S.W.2d 161, 164 (Tex. Civ. App. 1968)). Thus, firearms sellers in Texas owe a duty of care toward third parties, like Plaintiffs, who may be injured by the negligent sale or transfer of a firearm.

Oasis Outback raises several arguments in an attempt to shirk its legal duty, none of which are persuasive. Br. at 16-18.

Oasis Outback argues both that there is no duty to control the conduct of third persons absent a special relationship and that intentional criminal conduct is never foreseeable. Br. at 16-18. But that misstates Texas law: it is well-established that a defendant's "negligence is not superseded and will not be excused when the criminal conduct is a foreseeable result of such negligence." *Travis v. City of Mesquite*, 830 S.W.2d 94, 98 (Tex. 1992); *see also Nixon v. Mr. Pop. Mgmt.*, 690 S.W.2d 546, 550 (Tex. 1985) (noting that "Texas courts follow th[e] rule" that a "tortfeasor's negligence will not be excused where the criminal conduct is a foreseeable result of such negligence"). This duty is not dependent on a special relationship but exists where the criminal conduct was foreseeable.

Defendant's citation to *Allen v. Wal-Mart Stores*—a federal case interpreting state law—is unavailing. Br. at 17. In *Allen*, the question of special relationships arose in the context of whether individual Wal-Mart employees accused of selling significant quantities of an abusable inhalant owed "a duty of care independent of their employment" and thus could be sued individually. No. H-16- 1428, 2017 WL 978702, at *10-11 (S.D. Tex. Mar. 14, 2017), *aff'd*, 907 F.3d 170 (5th Cir. 2018).  That issue is plainly inapposite here since Plaintiffs have not sued any

16

of Oasis Outback's employees. And *Allen* reiterated that a defendant (in that case, Wal-Mart) could be liable for the criminal actions of a third party if the criminal conduct was a foreseeable result of Wal-Mart's negligence. *Allen*, 2017 WL 978702, at *16.

Oasis Outback argues that a third party's conduct must be "the foreseeable result of the defendant's alleged negligence to impose a duty." Br. at 16 n.5. Plaintiffs do not disagree. "The test for foreseeability is whether a person of ordinary intelligence would have anticipated the danger his or her negligence creates." *Sw. Key Program v. Gil-Perez*, 81 S.W.3d 269, 274 (Tex. 2002) (citation omitted); see also *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 549-50 (Tex. 1985) ("Foreseeability means that the actor, as a person of ordinary intelligence, should have anticipated the dangers that his negligent act created for others.") (citation omitted). Critically, foreseeability "'does not require that a person anticipate the precise manner in which injury will occur once he has created a danger situation through his negligence.' It requires only that 'the general danger, not the exact sequence of events that produced the harm, be foreseeable.'" *Univ. of Tex. M.D. Anderson Cancer Ctr. v. McKenzie*, 578 S.W.3d 506, 519 (Tex. 2019) (citations omitted). And it is the burden of the defendant to prove that the third party's criminal conduct was not foreseeable. *Phan Son Van v. Pena*, 990 S.W.2d 751, 754 (Tex. 1999).

Here, Plaintiffs alleged that Ramos's conduct was the foreseeable result of Oasis Outback's negligent sale and transfer of the AR-15-style rifles and ammunition—and these allegations suffice at this stage to establish Oasis Outback's duty. Am. Compl. ¶¶ 106-112, 212-220, 226-228 (alleging that Oasis Outback knew that Ramos was purchasing over $3,000 worth of firearms and ammunition within days of turning 18 and dressing and behaving in a manner that caused at least one other store customer to comment that he "looked like a school shooter"). The harm suffered by Plaintiffs as a result of Oasis Outback's actions is one type of harm—in fact, the most

predictable type of harm— that flows from the negligent sale and transfer of an AR-15-style weapon. It does not take more than "ordinary intelligence" to anticipate the tragic consequences of Oasis Outback's negligent sale and transfer.[5]

There is no bright-line rule that intentional criminal conduct is not foreseeable, as Oasis Outback suggests. Br. at 17. To the contrary, Texas courts routinely allow negligence claims based on the foreseeable intentional conduct of a third-party proceed: In *Walkoviak v. Hilton Hotels Corp.*, the court reversed a grant of summary judgment for the defendant based on disputed fact issues after the individual plaintiff was beaten, stabbed, and robbed in a parking lot owned by the hotel. 580 S.W.2d 623, 624-26 (Tex. Civ. App. 1979). In *Morris v. Barnette*, summary judgment for the defendant was also reversed when the plaintiff was physically and sexually assaulted in a laundromat owned by the defendant. 553 S.W.2d 648, 649-51. (Tex. Civ. App. 1977). And in *Nixon*, the Texas Supreme Court allowed claims against a property management company to proceed to trial, where the plaintiff had been assaulted by a third party in a vacant apartment managed by that company. 690 S.W.2d at 547, 50-51. The fact that all three cases proceeded past the motion to dismiss stage makes plain that there is no bright-line rule that intentional criminal conduct can never be foreseeable. And as the procedural histories of the cases

---

[5] The frequency with which mass shootings and school shootings have occurred in the last decade also bears on the question of foreseeability. As the Amended Complaint alleges, "From Parkland to El Paso to Uvalde, AR-15-style rifles have been the weapon of choice for the young male shooters who disproportionately commit the most destructive mass shootings." Am. Compl. ¶ 84. "Foreseeability is a highly fact-specific inquiry that must be determined 'in the light of the attending circumstances,' not in the abstract." *Stanfield v. Neubaum*, 494 S.W.3d 90, 98 (Tex. 2016) (quoting *Tex. & Pac. Ry. Co. v. Bigham*, 38 S.W. 162, 164 (Tex. 1896)). These "attending circumstances" necessarily include the frequency with which young men armed with AR-15-style rifles have carried out atrocities in towns across Texas and the United States.

cited by Oasis Outback demonstrate, this question of foreseeability is fact-intensive and therefore properly decided either at summary judgment or at trial, not on a motion to dismiss. *See Cowart v. Kmart Corp.*, 20 S.W.3d 779, 782 (Tex. App. 2000) (summary judgment); *Chapman v. Oshman's Sporting Goods, Inc.*, 792 S.W.2d 785, 786 (Tex. App. 1990) (summary judgment); *Holder v. Bowman*, No. 07-00-0126-CV, 2001 WL 62596, at *1 (Tex. App. Jan. 25, 2001) (take nothing summary judgment).

In support of its argument that the shooting here was not foreseeable, Oasis Outback cites *Phillips*, 84 F. Supp. 3d at 1226, in which the court found that the only fact pled to suggest that the defendant should have questioned the shooter's purchase was the quantity of ammunition he bought. Br. at 18. But here, by contrast, Plaintiffs have alleged facts that should have caused and in fact did cause Oasis Outback to question the shooter about his purchase and realize that he was likely to use the product in a manner involving unreasonable risk of physical injury to others. He was physically present in Oasis Outback, dressed in all black, visibly nervous and behaving suspiciously. Am. Compl.¶ 111. His actions were concerning enough that other customers described him as giving off "bad vibes" and looking "like one of those school shooters." *Id.* Nor was this a case of a single transaction, but rather three, in the course of four days, involving two AR-15-style rifles and ammunition worth over $3,000. *Id.* at ¶¶ 106-112. He had just turned 18 and was making these large purchases with suspicious urgency. *Id.* at ¶¶ 111.[6] And the Oasis

---

[6] Though it is legal to purchase a long gun at age 18, the Court can still consider Ramos's age, combined with the urgency with which he made his purchases, along with Plaintiffs' other allegations in deciding whether the shooting was the foreseeable result of Oasis Outback's negligent sale and transfer. Oasis Outback argues that, because the purchase did not violate the federal criminal law governing minimum age for firearm purchases, this Court should not consider Ramos' age. Br. at 18. But it cites no legal authority for this position, and Ramos' age was one of the factors that caused Oasis Outback's owner to be concerned about the purchase, and it is fair for the Court to consider it in its analysis. *See Greater Houston Transp. Co. v. Phillips*, 801 S.W.2d

Outback owner himself was concerned enough to question Ramos on how, exactly, he could afford all this, an inference made based on his age, appearance, and purchases. *Id.* at ¶ 111. At this juncture of the case, where courts "must accept as true all material allegations in the complaint, as well as any reasonable inferences to be drawn from them, and must review those facts in a light most favorable to the plaintiff," *Schydlower v. Pan Am. Life Ins. Co.*, 231 F.R.D. 493, 498 (W.D. Tex. 2005), Plaintiffs have met the pleading standard for claims of negligent sale and transfer and should be permitted to move past the motion to dismiss stage.

### III.   In the Alternative, the Court Should Grant Plaintiffs Leave to Amend Their Complaint

Plaintiffs have met the pleading standard necessary to assert viable claims, and Oasis Outback's motion should therefore be denied.  In the alternative, however, Plaintiffs respectfully request that the Court allow them to amend the Complaint to allege additional facts to the extent the Court finds the present allegations insufficient on any claim. "Dismissal under Rule 12(b)(6) generally is not with prejudice—meaning, not immediately final or on the merits—because the district court normally will give the plaintiff leave to file an amended complaint to see if the shortcomings of the original document can be corrected." 5B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1357 (3d ed. 2002). The Fifth Circuit's "cases support the premise that '[g]ranting leave to amend is especially appropriate . . . when the trial court has dismissed the complaint for failure to state a claim.'" *Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002) (quoting *Griggs v. Hinds Junior College*, 563 F.2d 179, 180 (5th Cir. 1977)). This is so, "even when the district judge doubts that the

---

523, 525 (Tex. 1990) (stating that determining whether defendant owed a duty to plaintiffs requires an analysis of several interrelated factors).

plaintiff will be able to overcome the shortcomings in the initial pleading." Wright & Miller, *supra*, § 1357.

After Plaintiffs filed their complaint, for example, surveillance video became public that shows Ramos handling the Daniel Defense rifle in Oasis Outback in a dangerous manner (peering down the barrel and placing his finger on the trigger). Yami Virgin, *Exclusive Video shows Uvalde shooter had a plan*, News4 San Antonio, (Feb. 28, 2023), https://news4sanantonio.com/newsletter-daily/exclusive-video-and-statements-show-indicators-missed-that-uvalde-shooter-had-a-plan. Additionally, more details about Ramos's transactions with Oasis Outback were recently made public, including images of receipts that show his method of payment, including cash. *After Uvalde: Guns, Grief & Texas Politics* (PBS Frontline May 30, 2023), https://www.pbs.org/wgbh/frontline/documentary/after-uvalde-guns-grief-texas-politics/. Plaintiffs can allege additional facts that put Oasis Outback on notice that Ramos was likely to use the product in a manner involving unreasonable risk of physical injury to others.

**CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully ask this court to deny Oasis Outback's motion to dismiss.

Dated:  July 28, 2023

RESPECTFULLY SUBMITTED,
*/s/ Charles A. Bonner*
**LAW OFFICES OF BONNER & BONNER**
CHARLES A. BONNER
CABRAL BONNER
475 Gate Five Rd., Suite 211
Sausalito, Ca 94965
Tel: (415) 331-3070
Fax: (415) 331-2738
e-mail: cbonner799@aol.com
e-mail: cabral@bonnerlaw.com
e-mail: eseifert00@hotmail.com

**EVANS LAW OFFICE P.P.L.C.**
JERRY EVANS
127 N. West Street
Uvalde, Texas 78801
Tel: (830) 900-5021
e-mail: devanslawoffice@gmai.com

**THE BONNER LAW FIRM, P.C.**          **Legal Center of Jose Angel Gutierrez, P.C.**
VICTOR BONNER                         JOSE ANGEL GUTIERREZ
4820 Old Spanish Trail                429 W. 12th Street
Houston, Texas 77021                  Dallas, Texas 75208
Tel: (832) 433-6565                   Tel: 214-745-5400
e-mail: vmbonner@yahoo.com            e-mail: joseangelgutierrez@yahoo.com

22

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on or about July 28, 2023, a true and accurate copy of

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT OASIS**

**OUTBACK, LLC'S MOTION TO DISMISS** was served on counsel of record via the

CM/ECF system.

Respectfully Submitted,

*/s/Charles A. Bonner*

LAW OFFICES OF BONNER & BONNER
CHARLES A. BONNER
CABRAL BONNER
475 Gate Five Rd., Suite 211
Sausalito, Ca 94965
Tel: (415) 331-3070
Fax: (415) 331-2738
e-mail: cbonner799@aol.com
e-mail: cabral@bonnerlaw.com

23